IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

NA'EEM OMARI                                                                PLAINTIFF

VS.                                    3:08CV00075JMM

JOHN E. POTTER,                                                           DEFENDANT
POSTMASTER GENERAL

## ORDER

Pending is Defendant's motion to dismiss or, in the alternative, for summary judgment. (Docket # 37). Plaintiff has responded and Defendant has filed a reply. For the reasons set forth herein, the Court finds that Defendant's motion should be, and hereby is, granted.

### Facts

Plaintiff filed his *pro se* employment discrimination Complaint against John E. Potter, Postmaster General, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, alleging that the Postal Service did not hire him because of his perceived national origin.[1] Defendant argues, in part, that Plaintiff's Complaint fails to state a claim for national origin discrimination under Title VII because he applied for work with the Postal Service as an independent contractor, not as an employee. Plaintiff contends that a question of fact exists as to whether the position for which he applied was a bona fide independent contractor position. Because the Court finds this issue dispositive, the Court will not address the remaining arguments set forth by Defendant.

In 2003, the Postal Service began the procurement of private sector contract EEO investigation services for its employee EEO complaint processing program. The Postal Service

---

[1] Plaintiff is African American but claims that his name has a "middle eastern flavor."

retained Manpower, Inc. to assist in the recruitment and pre-screening process, and to provide security clearance-related services.  During the next year, the Postal Service and Manpower personnel prepared the materials for and conducted an initial solicitation (Round 1), after which they made minor revisions to the process and materials. In December 2004, the Postal Service and Manpower initiated a second round of procurement (Round 2).  Manpower placed an advertisement in various media soliciting expressions of interest from qualified individuals for the position of contract EEO investigator on behalf of an undisclosed governmental principal (the Postal Service).  The second sentence of this advertisement stated: "This position is a home-based independent contractor."   The advertisement stated that to be considered, interested persons were required to access a specific web-site, then complete and submit to Manpower an on-line pre-screening questionnaire. Several thousand people responded to Manpower's advertisements. On January 6, 2005, Plaintiff completed and submitted the on-line pre-screening questionnaire.

     Manpower's screening process was largely automated.  Its computer system would automatically receive and electronically score each questionnaire. The computer created a list which contained only the name and score of the submissions received.  The computer then created an indicator box next to each name on the list, and placed the names in order by score from highest to lowest. Periodically, Manpower personnel would review the list and place an electronic check-mark in the box beside all names with a score below 95%.  Defendant claims that no one actually viewed or evaluated the questionnaire answers or the information in the submission.  The computer system would then automatically generate an e-mail to the check-marked individuals notifying them that they were no longer under consideration for the

contractor position.

Defendant contends that Plaintiff's questionnaire/submission was processed just like all other submissions received in the Round 2 solicitation, and the computer scored Plaintiff's questionnaire at 93.5173, which was below the pre-determined cut-off score of 95%. Consequently, on January 14, 2005, the computer system automatically generated an e-mail to Plaintiff, notifying him that he was no longer under consideration for the contractor position.

Plaintiff denies that he failed to receive a passing grade/ minimum cut-off score and argues that his score surpassed the cut-off listed on the computer generated results document of 93 percent. Plaintiff also argues that no applicant having an initial passing score and middle-eastern sounding name was selected to advance to the second phase of the screening process. Further, Plaintiff argues that he should have received veteran point preference after he attained a passing score. Plaintiff claims that the fact that he was denied the preference is evidence of the agency's discriminatory animus.

During the February to May 2005 time frame, the Postal Service completed the procurement of contract EEO investigators. It completed the evaluation phase, made the selections from among the top qualified candidates from both Rounds 1 and 2, and, with Manpower's assistance, obtained security clearances, and conducted a candidate training class regarding the requisite contents of a Postal Service report of investigation. The award phase was completed through the issuance of separate, but essentially identical, Ordering Agreements to 60 individuals. Section 3.2 of the Ordering Agreement sets forth provisions addressing the employment of Postal Service employees and provides in pertinent part:

> The USPS prohibits contracting with Postal Service employees,

> their immediate families, or business organizations substantially
> owned or controlled by Postal Service employees or their
> immediate families. Immediate family means spouse, minor child
> or children, and individuals related to an employee by blood who
> are residents of the employee's household.

This is the document that Plaintiff would have been offered had he scored higher on the pre-screening questionnaire, passed the interview phase, been included on the list of the top qualified candidates, obtained his security clearances, and attended and passed the training course.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the

> record does not disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue. If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

To bring a successful Title VII claim against the United States, a Plaintiff must demonstrate the existence of a required employment relationship. See 42 U.S.C.A. § 2000e-16(a). Section 2000e-16(a) provides that the threshold requirement for imposing Title VII liability against the federal government is that Plaintiff be an "employee or applicant for employment," of the Defendant federal agency. *See also, Wilde v. County of Kandiyohi*, 15 F.3d 103 (8th Cir. 1994). A plaintiff's lack of the required employment relationship deprives him of standing to pursue a Title VII claim. *See Jacob-Mua v. Venemen*, 289 F.3d 517 (8th Cir.2005) (holding that a non-employee volunteer lacks standing to bring a retaliation claim under Title VII).

The Eighth Circuit Court of Appeals has observed that Title VII's "nominal definition of an 'employee' as 'an individual employed by an employer,' 42 U.S.C. §2000d(f), 'is completely circular and explains nothing.'" *Schwieger v. Farm Bureau Ins. Co.*, 207 F.3d 480, 483 (8th

Cir.2000).  In *Schweiger*, the Court reasoned that Congress must have intended the term to be read according to the common law agency definition and determining whether a party is an employee or an independent contractor, requires consideration of " 'all aspects of the working relationship' between the parties." *Id. (quoting Wilde*, 15 F.3d at 106).  The Court noted that the primary, but not decisive, consideration is the hiring party's right to control the manner and means by which tasks are accomplished.  In addition, the Court listed the following twelve other factors for the Court to take into account:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id*. at 484 (*citing Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992).  These factors are nonexhaustive and the Court must also take into account the "economic realities" of the worker's situation. *Id*. at 484.  The Court cautioned that "[t]he existence of a contract referring to a party as an independent contractor does not end the inquiry, because an employer 'may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship.' " *Id*. at 483 (*quoting Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 81 (8th Cir.1996), *cert. denied*, 520 U.S. 1211(1997)).

Relying on the Statement of Work describing the advertised job, Plaintiff argues that the Postal Service retained control over the issues its EEO Investigators would investigate, the right to approve or disapprove of the investigative plan, acceptable approaches available for securing information, the content of the report, and standards of performance.  Plaintiff also argues that

the position guaranteed 40 hours per week work to the investigators.

It is undisputed that the advertisement for the work for which Plaintiff applied as well as the questionnaire filled out by Plaintiff stated that the work was to be performed by an independent contractor. Further, Defendant presented the unrefuted affidavit of Vickye Byron, Manager, EEOC Services, National EEO Investigative Services Office, United States Postal Service, in which Ms. Byron attests as follows:

    a.    The Postal Service did not supervise the contractor's day-to day activities; they were not accountable to the Postal Service for their time or activities. . . .

    b.    The Postal Service did not tell its investigators what to do or how to do their tasks. . . .

    c.    The Postal Service does not furnish any equipment, supplies (with one exception) or maintenance support to any contractor - every contractor furnishes his own computer, software, scanner, fax machine, copy machine, telephone, long distance service, internet access, and all supplies. The Postal Service does supply every contractor with file folders and pre-printed tabs so that all Postal Service reports of investigation have a similar appearance.

    d.    The Postal Service does not provide any contractor with an office or work place. . . .

    e.    The Postal Service does not guarantee the contractor any quantity of volume of work - when the Postal Service determines that it needs services, it will offer the contractor the opportunity to perform that project. Once the project is complete, that relationship is complete.

    f.    While the Ordering Agreement is a indefinite-term agreement with termination provisions, it however, merely provides the contractor with the ability to obtain project work in the future; and, the work itself is piece-work - it ends when the project is completed.

    g.    When the contractor completes a project, and the Postal Service accepts it, the contractor invoices the Postal Service; the Postal

        Service then pays the contractor on a piece-work basis, at pre-set amounts . . . .

h.    The Postal Service does not provide any contractor with, nor does any contractor accrue any benefits - no annual leave, no sick leave, no health insurance, no life insurance.

i.    Contractors to the Ordering Agreements are not eligible to participate in FERS.

j.    The Contractor is responsible for all tax liabilities. . . .

Considering all of the aspects of the working relationship between the Postal Service and those individuals hired as EEO Investigators, the Court finds that the Investigators provided services to the Postal Service as independent contractors and not as employees. Specifically, the Court finds that the following factors count in favor of independent contractor status: the skill required; the source of the instrumentalities and tools; the location of the work; the extent of the hired party's discretion over when and how long to work; the method of payment; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. Even if the Court were to find that the Postal Service exercised some degree of control over the manner and means by which the tasks were to be completed as argued by Plaintiff, the Court finds that because the Postal Service did not supervise the contractor's day-to day activities, did not tell its investigators what to do or how to do their tasks and the contractors were not accountable to the Postal Service for their time or activities, this factor favors neither employee or independent contractor. The Court finds that the working relationship between the EEO Investigators and the Postal Service was as independent contractors. *See Wilde*, 15 F. 3d at 106 ( finding that the fact that some aspects of the relationship suggest an employment relationship is insufficient to outweigh the

strong evidence indicating that the relationship was as an independent contractor), *see also,*

*Mason v. African Development Foundation*, 355 F. Supp.2d 85 (D.C.D.C, 2004).

Conclusion

For the reasons set forth herein, the Court finds that Defendant's motion should be, and hereby is, granted.

IT IS SO ORDERED this 21st day of September, 2009.

*[signature]*
James M. Moody
United States District Judge